Gottschalk v. Noyes.

---

### Albert Wesley Gottschalk v. William H. Noyes et al.

#### Gen. No. 12,580.

1. EXTENSION AGREEMENT—*when not effected.* An extension agreement is not complete and therefore does not prevent foreclosure for default in payment of the mortgage debt where it was agreed that extension notes, etc., should be executed, but were not, upon request, so executed.

2. MASTER—*when reference to, without first ascertaining rights of parties, not improper.* It is not improper to refer a cause to a master to take proofs and report without first ascertaining the substantive rights of the parties in interest, where such rights are not abstruse and where the matter of the accounting would be the same irrespective of what such rights might ultimately be determined to be.

Foreclosure proceeding. Appeal from · the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed July 13, 1906. Rehearing denied July 24, 1906.

Statement by the Court. Appellee, William H. Noyes, was the owner and holder of a note dated March

15, 1898, for $2,000, payable five years after date, with interest at seven per cent. per annum, payable semi-annually, made by Alma Clark and Henry W. Clark, her husband. The note and interest were payable at the office of H. O. Stone & Company, Chicago. The interest was evidenced by ten coupon notes of $60 each, due respectively as the several installments of interest fell due. The indebtedness represented by the notes was secured by a trust deed executed by Clark and wife to the Chicago Title & Trust Company as trustee, conveying the west half of lot 13 (except the elevated railroad right-of-way), block 1, in Johnson's subdivision, 36-40-13, commonly known as No. 560 Armitage avenue, Chicago.

On February 2, 1903, one Fix, who was then the owner of the property, conveyed it to George Gottschalk, who did not assume the indebtedness above described. George Gottschalk took the title, however, for the benefit of appellant, Albert W. Gottschalk, the real owner, to whom the title was afterwards conveyed. The deed to George Gottschalk was recorded February 3, 1903, but the deed from him to appellant was not recorded until after these foreclosure proceedings were commenced. The bill is an ordinary foreclosure bill.

Appellant answered the bill, but his answer is not abstracted further than to say that it denies that default was made in the unpaid portion of the principal note, and claims that the same had been extended; avers that he is the owner and in possession of the premises, and demands strict proof of the allegations of the bill.

The cause was referred to a master, who took the testimony and reported his conclusions on the law and the evidence. Objections and exceptions were filed to the report, and the court entered a decree of foreclosure.

ALBERT WESLEY GOTTSCHALK, appellant, *pro se.*

HART J. FITZGERALD, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The principal contention of appellant is that there was no default when the bill was filed on April 11, 1904, because there was a valid agreement of extension made February 6, 1903, between appellant and appellee, in consideration that appellant, who was not liable for the mortgage debt, should agree to pay, besides the interest accruing, $100 on account of the principal on March 15th and September 15th of each year until $500 on the principal had been paid.

A subsequent supplemental agreement was made, it is claimed, that a formal written extension of the mortgage should be made for three years from March 15, 1904, in consideration that appellant reduce the principal indebtedness to $1,500 and sign the necessary extension papers, to be prepared by H. O. Stone & Co., on or before March 15, 1904, and pay Stone & Co. $15 for preparing them.

At the time the bill was filed the principal note was overdue a year by its terms. Appellee then had a right to foreclose when he filed his bill, unless there was a valid agreement for a sufficient consideration for an extension of the mortgage and note.

We think it unnecessary to discuss the first extension agreement, for under the evidence that must be held to have been waived by the substitution of the second agreement providing for a formal extension of the payment of the loan for three years from March 15, 1904, and that coupon interest notes for that period were to be executed by appellant on or before that date and appellant should pay Stone & Co. $15 for preparing the extension papers.

Appellant testified that he agreed with appellee upon the terms of an extension of the note and trust deed for three years, as follows:   Appellant was to go to the

office of H. O. Stone & Co. on or before March 15, 1904, and pay $100 in six months and $100 in twelve months on the principal and $54 on account of interest, and pay not to exceed $15 for preparing the extension papers, and sign an extension agreement and interest notes for the three years; that he called at that office on March 15th, but the papers were not ready; that he never afterwards called to sign the papers, although he was notified by Stone & Co that they were ready for his signature.

The conclusion from this testimony is obvious, that it was a part of the oral understanding that appellant was to give certain extension notes and that he never executed them. This was a material part of the agreement without which the agreement was not completed. Appellee by his letter of March 21, 1904, requested appellant to call at the office of Stone & Co. and sign the papers for the extension, but appellant failed to comply with the request. It is clear, we think, that the proposed extension agreement was never completed and, therefore, there was no extension of the indebtedness represented by the note and mortgage. If there was no valid and complete agreement between the parties for an extension, then, beyond all question, the debt was due and unpaid and appellee had a right to file his bill to foreclose by reason of the maturity of the indebtedness.

Appellant assigns numerous errors in the proceedings of the court. It is claimed that the order of reference to the master did not empower the master to take testimony or to report in the case. We think, however, the order of reference clothed the master with power to take the evidence and report his conclusions.

We do not think the court erred in making a reference of the case to a master, without first hearing the evidence and declaring the rights of the parties. The rights of the parties were not involved in any obscurity or doubt. No questions of that character were pre-

sented which would in any way change the accounting or finding of the amount due on the indebtedness. Appellant was not deprived of any right or equity by the reference.

Appellant was in no way concerned as to Alma and Henry W. Clark. He held their equities and could assert them. Whether they were properly served and brought into court or not could not in any way affect appellant's rights. If appellant wishes to redeem from the sale under the decree or pay the decree before sale, he can do so. The sheriff's return shows that they were properly served, and they are not raising any question as to the service upon them.

We do not find any error in the record of which appellant can complain as to the jurisdiction of unknown owners or the tender by appellant of $1,814.19 to appellee in open court. Appellant was himself an unknown owner under his unrecorded deed until after the bill was filed. The record contains nothing tending to show any outstanding interest in unknown owners who are not brought into court, of which appellant can here complain.

The evidence and the admissions of the appellant in his answer and his testimony are amply sufficient to support the decree, and it must be affirmed.

*Affirmed.*